IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| KIMBERLY DAVIS, et al., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-653 |
| § | |
| CHEVRON PIPELINE COMPANY, et al., § | |
| § | |
| Defendant. § | |

**ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE**

This litigation results from an explosion that occurred off the coast of Louisiana on or about October 12, 2006. Albert Davis, Jr. ("Davis") and Gilbert Tardy ("Tardy") have been missing since the explosion, and Terry Abraham ("Abraham") was killed in the explosion. Plaintiffs are the family members of these three men, along with the estates of Davis and Tardy ("Plaintiffs"). Plaintiffs bring this action against Chevron Pipeline Company, Chevron USA Inc., Chevron Texaco Pipeline Holdings, Inc., Chevron Natural Gas Services Inc. (collectively "Chevron"), Gulfport Energy Corporation ("Gulfport"), Central Boat Rentals, Inc. ("CBR"), and Diamondback Energy Services LLC ("Diamondback"). Chevron, Gulfport, CBR, and Diamondback filed a Motion to Transfer Venue to the Western District of Louisiana, Lafayette Division, and Plaintiffs filed a Response. For the reasons stated below, Defendants' Motion to Transfer Venue is respectfully **DENIED**.[1]

**I. Background**

On October 12, 2006, a spud on a construction barge, ATHENA 106, released from its raised

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

position and struck a submerged natural gas pipeline in West Cote Blanche Bay field, causing an explosion. Four people were killed, two are missing, and two workers survived the accident. Plaintiffs are the family members of the two missing workers, along with their estates, and family members of one of the four persons who were killed. Plaintiffs claim that Chevron, who owned and operated West Cote Blanche Bay field, allowed the field to fall into disrepair. According to Plaintiffs, Chevron decided to redevelop the field when gas prices rose. Plaintiffs contend that Chevron and Gulfport were joint venturers in the redevelopment of West Cote Blanche Bay Field, and that Diamondback provided contractor support to the joint venture.

Plaintiffs allege that, on the day of the accident, a tug, owned by CBR, was pushing ATHENA 106, which is owned by Athena Construction L.L.C. ("Athena"), the employer of Davis, Terry, and Abraham. The spud on the barge allegedly made contact with an improperly marked and improperly buried natural gas pipeline, resulting in an explosion that caused the severe personal injuries that are the subject of this litigation.

Davis, Terry, and Abraham were all residents of Louisiana, but some Plaintiffs are residents of Texas. Chevron has substantial operations in both Texas and Louisiana. Gulfport and Diamondback are headquartered in Oklahoma, and CBT is headquartered in Louisiana.

**II. Legal Standard**

The federal venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). The movant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring the movant to make a showing that the forum sought is more

convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed."). In determining whether a venue transfer is warranted, the Court considers the availability and convenience of witnesses and parties; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the location of pertinent books and records; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g.*, *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1395–96 (S.D. Tex. 1992). The decision to transfer a case lies within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

### III. Analysis

Defendants claim that the Southern District of Texas has little, if any, interest in presiding over this suit and that the Western District of Louisiana has "an appreciable interest in this proceeding by virtue of its jurisdiction over two limitation proceedings in which numerous personal injury, property damage and wrongful death claims have been filed." (Defs.' Mem. at 2.) Plaintiffs claim that the case should not be transferred because their choice of forum is entitled to great deference, some Plaintiffs reside in Texas, and only one defendant resides in Louisiana. Plaintiffs also contend that Defendants overstated the number of witnesses and the convenience of the Western District of Louisiana "in an effort to rob Plaintiffs of their choice of forum." (Pls.' Resp. at 1.) The Court will consider these competing contentions as it examines each of the venue factors below.

*A. Availability and Convenience of Witnesses and Parties*

3

"The availability and convenience of witnesses is arguably the most important of the factors" in the § 1404 analysis. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3851, at 415 (1986)). To support a motion to transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony. *See id.* (citing *Dupre*, 810 F. Supp. at 825). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.*

Defendants point to numerous witnesses that it contends live in Louisiana and will be inconvenienced if the trial is in Texas. Defendants contend that the two eye-witnesses who survived the explosion, Brian Dumesnil and Rodney Lewis, will be the most crucial witnesses in this case. Defendants claim that Dumesnil and Lewis were traveling with Davis, Terry, and Abraham at the time of the explosion and have direct, first-hand knowledge of the circumstances surrounding the accident. Both Dumesnil and Lewis are Louisiana residents, and the Record indicates that Dumesnil is employed by Athena. It appears that Lewis was a deckhand for CBR, but the Record does not indicate whether Lewis is still an employee of CBR.

Defendants claim that the testimony of the first-responders is also crucial. The following first responders live in Louisiana: (1) two first-responders who are employed by South Central Towing, which is located in Morgan City, Louisiana; (2) four first-responders who are employed by Athena; (3) two first-responders who are employed by Chevron; and (4) three first-responders who are contract employees of Chevron. Defendants claim that these first-responders will likely testify about the circumstances in the vicinity of the explosion before and afterward, efforts to extinguish the flames, potential causes of the explosion due to the placement and condition of the vessels, the

4

movement of the vessels afterward, the search for survivors, and other post-accident issues.

The final two witnesses who reside in Louisiana and are deemed to be key witnesses by the Defendants are the supervisor of ATHENA 108, a barge that was nearby when the explosion occurred, and the general manager of Athena. Defendants claim that these two potential witnesses, along with, possibly, other Athena employees, will have information regarding the decedents, the movement of ATHENA 106, braking and pinning mechanisms for the spuds, and the potential causes for the release of the spud while under tow.

Defendants have provided the Court with an adequate synopsis of the testimony for their cited witnesses, and the Court is convinced that *some* of these witnesses will be necessary. *See Dupre*, 810 F. Supp. at 825 ("The movant must specifically identify the key witnesses and outline the substance of their testimony."). However, the sheer number of witnesses cited by Defendants is not impressive because many of the cited witnesses would provide redundant or cumulative testimony. *See Continental Airlines*, 805 F. Supp. at 1397 ("[T]his Court vigorously exercises its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum."). Furthermore, some of the first-responders listed are employed by Chevron, and one of the eye-witnesses may be employed by CBR. The convenience of key witnesses who are employees of defendants "is entitled to less weight because [defendants] will be able to compel their testimony at trial." *Continental Airlines*, 805 F. Supp. at 1397.

Though there are numerous eye-witnesses who live in Louisiana, Plaintiff argues that only a few eye-witnesses will be allowed at trial and that their alleged inconvenience cannot outweigh the other considerations before the Court. Plaintiffs also note that their three experts, who will inevitably

5

provide essential testimony, reside in the Southern District of Texas.

Additionally, Plaintiffs point out that the Southern District of Texas is a more convenient forum for several of the Parties, which weighs into this analysis. Plaintiffs, some of whom live in Texas, chose this forum, so it is presumed that they find it convenient. Chevron has substantial operations in both Texas and Louisiana. Diamondback and Gulfport are headquartered in Oklahoma, so their corporate representatives will have to travel to either forum. The only Party that is located in Louisiana, other than some Plaintiffs, is CBR. Louisiana is a more convenient forum for CBR. Taken *in toto*, it is clear that Louisiana will be more convenient for some Parties, and Texas will be more convenient for others.

There will be inconvenience to at least some witnesses and Parties in either forum. At this stage of the litigation, it appears that more key witnesses will be inconvenienced if the case remains in the Southern District of Texas. Thus, this factor weighs in Defendants' favor.

*B. Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses*

Parties to litigation face unavoidable costs in almost every case that goes to trial. *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). Furthermore, as is evident from the discussion above, it is "rare that the forum in which the case is litigated is the most convenient for all the parties involved." *Id.* So, while the costs of obtaining the attendance of witnesses and other trial expenses is a factor in the transfer analysis, it is not a substantial factor.

Here, Defendants claim that they will incur additional expense if this case is not transferred to the Western District of Louisiana because they will be forced to litigate separate trials based on the same operative facts. Defendants are referring to two Limitations Actions that are currently pending in the Western District of Louisiana. One of the proceedings was filed by Athena, and the other

6

proceeding was filed by CBR. According to Defendants, Plaintiffs will not be able to pursue claims against either of these Parties in Texas.[2] Plaintiffs argue that transferring this case to the Western District of Louisiana will not reduce expenses because, in addition to the two Limitations proceedings in the Western District of Louisiana, two other plaintiffs' cases are currently pending in Louisiana state courts. Thus, there is going to be multiple proceedings whether the instant case is transferred or not.

While the Court acknowledges that litigation is costly and that litigating the same facts in different forums may increase costs, the Court is not convinced that such costs are significant enough to place increased emphasis on this factor. It is impossible to avoid inconvenience to some witnesses and increased costs to some Parties, especially when the litigation involves a tragedy of this magnitude. Thus, while this factor weighs in favor of transfer, it is not given significant weight.

C. *Location of Books and Records*

The location of books and records is generally of little importance in personal injury cases. In the instant litigation, Defendants allege that this factor should take on greater significance and weigh in their favor because, in addition to the books and records that are located in Louisiana, the damaged pipeline segments and damaged vessels remain in the Western District of Louisiana. Conversely, Plaintiffs argue that this factor favors retention because the documents concerning the field and its pipelines will either be in Chevron's Houston offices or in the Oklahoma offices of Gulfport and Diamondback. Neither Party has indicated that the books and records relating to this action are so voluminous that the Party transporting them will incur substantial cost. Furthermore,

---

[2]Interestingly, Plaintiffs note that they will still be able to pursue claims against CBR because, according to Fifth Circuit precedent, Defendants cannot create the appropriate venue by filing limitation actions. *See Inland Dredging v. Sanchez*, 468 F.3d 864, 867–68 (5th Cir. 2006).

it is unlikely that any evidence relating to the damaged pipeline segments and vessels cannot be introduced as evidence via photography or videos. This factor does not weigh for or against transfer.

D. *Plaintiffs' Choice of Forum*

Plaintiffs' decision to litigate this case in Texas is entitled to great deference. *See Barnett v. Kirby Inland Marine, Inc.*, 202 F. Supp. 2d 664, 670 (S.D. Tex. 2002). Plaintiffs' choice of forum is entitled to less deference if Plaintiffs do not reside in the forum. *See, e.g.*, *Robertson* 979 F. Supp. at 1109 (finding that a Mississippi plaintiff's choice of the Southern District of Texas was entitled to little or no deference where the case had no connection to the forum). Here, some Plaintiffs reside in Texas, and some reside in Louisiana. The Court is not inclined to reduce the deference to Plaintiffs' choice of forum based upon the fact that *some* Plaintiffs reside in Louisiana because there are Texas Plaintiffs. Thus, this factor is entitled to substantial weight, and the weight is in favor of retention.

E. *Place of the Alleged Wrong*

The place of the alleged wrong is an important factor in venue determinations. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002). Here, the explosion occurred in the territorial waters located in the Western District of Louisiana. Defendants claim that the residents of the Galveston Division thus have little, if any, interest in the outcome of this case. The Court disagrees. First, Chevron does substantial business off the coast of Galveston. A question involving whether Chevron is in compliance with marine safety standards is unquestionably of interest to the citizens of Galveston. Second, many citizens in this Division either work in or near the Gulf of Mexico or have friends or relatives who do. These citizens are certainly interested in a case that involves an explosion that occurred while redeveloping an oil and gas field located in the Gulf. While

West Cote Blanche Bay Field is not located off of the coast of Galveston, significant oil exploration and development occurs off Galveston's coast, and the citizens of this Division are as concerned about marine safety as are the citizens of the Western District of Louisiana. Thus, the instant litigation impacts all the citizens who live and work along the Gulf Coast. Given the strong interest the factual scenario of the instant litigation invokes, the location of the accident is not a significant factor so long as the case remains in a Gulf-Coast court.

*F. Potential for Delay*

Any transfer will produce some delay, and Plaintiffs must show that a transfer at this stage would cause a significant or unusual delay in order for this factor to be relevant. *See In Re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of delay or prejudice might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). Here, Plaintiffs admit that it is not the eve of trial, but stress that prejudice results from any transfer. This case has not yet been set for trial, and the Court does not find that a significant or unusual delay would result if the case were transferred. Therefore, this factor weighs neither for nor against transfer.

The following facts weigh in favor of retention: (1) Plaintiffs chose this forum; (2) there are Plaintiffs from Texas; (3) Defendants have substantial contacts with Texas, and Chevron's principal place of business is in the Southern District of Texas; and (4) the citizens of this Division have a substantial interest in this case. Weighing in favor of transfer are (1) the convenience of the witnesses who reside in the Western District of Louisiana; and (2) the increased costs associated with litigating this case in Texas when there are already similar cases being litigated in Louisiana. This case unquestionably presents a close call. At this juncture, the Court finds that the factors weighing in

favor of retention slightly outweigh those weighing in favor of transfer. However, the Court will keep an open mind as discovery proceeds. If Defendants face insurmountable obstacles in obtaining depositions for trial, the Court will reconsider.

## IV. Conclusions

For the reasons stated above, Defendants' Motion to Transfer Venue is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 2d day of February, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge